## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOUGLAS FOREGGER,         ) | |
|                  ) | |
|      Plaintiff,       ) | |
|                  ) | |
|      v.             ) | Civil Action No. |
|                  ) | 12-11914-FDS |
| RESIDENTIAL CREDIT SOLUTIONS,  ) | |
| INC.,               ) | |
|                  ) | |
|      Defendant.     ) | |
|                  ) | |

### MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

SAYLOR, J.

This is an action arising from a home mortgage foreclosure.  On October 9, 2012, Residential Credit Solutions, Inc. ("RCS") purchased plaintiff Douglas Foregger's home, located at 6 Fayette Street, Nantucket, Massachusetts, at a foreclosure sale.  Foregger has brought suit seeking a determination that he holds superior legal title to the property.  Foregger contends that RCS did not have standing to foreclose and failed to provide sufficient notice of his right to cure his mortgage default as required by Massachusetts law.  RCS has brought a number of counterclaims, including claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, judgment for possession and execution, and deficiency judgment.

The parties have cross-moved for summary judgment.  Plaintiff has also filed a motion to amend his complaint to assert new claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A, (4) failure to respond to a qualified written notice in violation of

the Real Estate Settlement Procedures Act, and (5) unlawful foreclosure.  For the reasons set forth below, defendant's motion for summary judgment will be granted in part and denied in part, plaintiff's motion for summary judgment will be denied, and plaintiff's motion to amend the complaint will be granted in part and denied in part.

I.      **Background**[1]

        A.      **Plaintiff's Mortgage**

Plaintiff Douglas Foregger received and recorded the deed to the property at 6 Fayette Street, Nantucket, Massachusetts, in June 2006.  (Def. SMF ¶ 1).  On June 22, 2007, Foregger executed a note in the amount of $1.8 million to American Home Mortgage.  (Def. SMF ¶ 2; Garber Aff. Ex. B).  To secure the note, Foregger granted a mortgage that same day to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for American Home Mortgage. (Def. SMF ¶ 5; Garber Aff. Ex. C).  The mortgage was recorded in the Nantucket County Registry of Deeds on June 27, 2007.  (Def. SMF ¶ 5).

At least as of July 2009, AHMSI was acting as mortgage servicer on the loan.  On November 25, 2009, an assignment was executed transferring Foregger's mortgage from MERS, as nominee for American Home Mortgage, to American Home Mortgage Servicing, Inc

---

[1] Local Rule 56.1 states that a motion for summary judgment shall include " a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried . . . ."  It also requires that a party opposing a motion for summary judgment include "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried."  Those facts that are not controverted by a party opposing summary judgment "will be deemed to be admitted."

Here, plaintiff has both moved for summary judgment and opposed defendant's motion for summary judgment.  Although plaintiff's cross-motion for summary judgment states that a Statement of Undisputed Facts is attached, and plaintiff cites throughout his briefing to that document, this Court has been unable to locate that document in the nearly 500 pages of exhibits submitted by plaintiff.  The task of determining which facts are truly undisputed has been greatly complicated by plaintiff's failure to comply with the rules.  Nonetheless, the Court has attempted to determine the disputed issues of fact from the record.  Except where otherwise noted, the facts set forth in this section are undisputed.

("AHMSI").  (Def. SMF ¶ 7; Garber Aff. Ex. E).  That assignment purported to be effective

November 11, 2009.  (Def. SMF ¶ 7).  It was recorded on December 8, 2009.  (Def. SMF ¶ 7;

Garber Aff. Ex. E).

On March 28, 2011, an assignment was executed purporting to transfer Foregger's

mortgage from MERS, as nominee for AHMSI, to RCS.  (Ex. H [Docket No. 23-3 at 9-23]).[2]

That assignment was never recorded.  It appears that the purported assignment was a mistake, as

MERS was no longer the nominee, and thus had no interest to assign.

On October 19, 2011, an assignment was executed transferring Foregger's mortgage from

AHMSI to RCS.  (Def. SMF ¶ 11; Garber Aff., Ex. G).  The mortgage was recorded on October

31, 2011.  (Def. SMF ¶ 11).

On February 17, 2012, a confirmatory assignment was recorded, confirming and

correcting the previously-recorded October 19, 2011, assignment to RCS.

B.    **Foreclosure Proceedings**

At some time between 2007 and 2009, Foregger fell behind on his mortgage payments.

On July 16, 2009, AHMSI sent him a 90-day Notice of Default.  (Def. SMF ¶ 6; Longoria Aff.,

Ex. 1).

On July 27, 2010, a complaint was filed in the Massachusetts Land Court on behalf of

AHMSI under the Servicemembers Civil Relief Act.  (Pl. Mem. at 11; Ex. E [Docket Nos. 23-1

at 68 and 23-3 at 1-3]).  Foregger answered the complaint, and alleged that AHMSI was not the

---

[2] Plaintiff has submitted nearly 500 pages in exhibits.  Rather than submitting a separate document for each exhibit, plaintiff has submitted nine "Exhibits," many of which start mid-exhibit or contain multiple exhibits (some with exhibits to the exhibits).  For ease of reference, the Court will refer to exhibits by letter, as well as by which of the nine "Exhibits" they appear in, and by page number.  For example, Exhibit H—which is found between pages 10 and 23 of "Exhibit 3" on the docket—will be referred to as "(Ex. H [Docket No. 23-3 at 10-23])."

mortgagee of record, and thus lacked standing to obtain a SCRA judgment.  On February 24,

2011, the Land Court issued an order to show cause that required AHMSI to submit

documentation of standing.  On April 4, 2011, in an attempt to demonstrate that it had standing,

AHMSI submitted a response supported by documents reflecting the November 25, 2009

assignment of the mortgage to it, as well as the purported March 28, 2011 assignment from it to

RCS.  (Ex. H [Docket No. 23-3 at 10-23]).  At the same time, AHMSI filed a motion to amend

the complaint to change the plaintiff's name to RCS.  That motion was denied by the Land

Court.  On August 31, 2011, Judge Cutler dismissed the complaint because, due to the "March

28, 2011 assignment of the subject mortgage to [RCS]," AHMSI "no longer ha[d] an interest in

the outcome of the litigation."  (Ex. J [Docket No. 23-3 at 28-30]).

On October 14, 2011, RCS filed a subsequent SCRA complaint in the Land Court.  (Def.

SMF ¶ 10; Longoria Aff., Ex. 2).  On May 10, 2012, the Land Court issued an order finding that

RCS "has demonstrated a sufficient interest in the [Foregger] mortgage to give it standing for the

limited purposed of obtaining a judgment under the Servicemembers Civil Relief Act . . . ."

(Longoria Aff., Ex. 4).  Judgment was entered by the Land Court on July 27, 2012.  (Longoria

Aff., Ex. 6).

Following the entry of judgment, RCS published a notice of sale of real estate in the

Nantucket Inquirer & Mirror for three consecutive weeks:  August 30, September 6, and

September 13, 2012.  (Def. SMF ¶ 21).  On August 31, RCS also sent a notice of sale to

Foregger at the property address.  (Def. SMF ¶ 22).

On September 27, 2012, counsel acting on Foregger's behalf sent a letter to Homeward

Residential, Inc.—the loan servicer prior to RCS—seeking information about the mortgage.  (Ex.

L [Docket No. 23-3 at 39-60]).  The letter stated that it was a Qualified Written Request under the Real Estate Settlement Procedures Act, to which RCS was required to respond.   (Ex. L [Docket No. 23-3 at 39-60]).  RCS responded to the letter on November 1, 2012.  (Longoria Aff., Ex. 9).

A foreclosure sale was initially scheduled for September 28, 2012, but later postponed and rescheduled for October 9.  (Def. SMF ¶ 24).  That foreclosure sale was held as scheduled, and the property was acquired by RCS for $1.36 million.  (Def. SMF ¶ 27).

In the meantime, on September 28, 2012, Foregger filed a petition to try title pursuant to Mass. Gen. Laws. ch. 240 §§ 1-5 in the Massachusetts Land Court.  (Def. SMF ¶ 26).  On October 15, 2012, RCS removed that matter to this Court.  (Def. SMF ¶ 28).

## II.   Standard of Review

### A.   Motion to Amend

Under Fed. R. Civ. P. 15, a party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after service of a responsive pleading or motion under Fed. R. Civ. P. 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  In all other cases, a party may amend a pleading only with consent of the opposing party or leave of the court.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  Leave to amend should not be granted if the moving party has shown undue delay, bad faith, or a dilatory motive; leave may also be denied if the amendment would be futile or cause undue prejudice.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A court will measure "futility" by different yardsticks depending on the posture of the case before it.  *Hatch v. Department for Children, Youth, and their Families*, 274 F.3d 12, 19

(1st Cir. 2001).   If leave to amend is sought before the completion of discovery and the filing of

summary judgment motions, "futility" is judged by reference to the liberal criteria of Fed. R.

Civ. P. 12(b)(6).   *Id.*; *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir.

1996).   However, the bar for a plaintiff seeking to amend a complaint is typically higher after a

motion for summary judgment has been filed.   In such cases, plaintiff must demonstrate that the

proposed amendment is "not only theoretically viable but also solidly grounded in the record."

*Hatch*, 274 F.3d at 19.   In other words, the allegations in the proposed amended complaint will

be considered futile unless supported by substantial evidence.   *Id.*; *see also Resolution Trust*

*Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994).

### B.   <u>Summary Judgment</u>

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."   *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotations omitted).   Summary judgment is appropriate when the

pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."   Fed. R. Civ. P. 56(a).   A genuine issue is "one that must be decided at trial because the

evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact

finder to resolve the issue in favor of either party."   *Medina-Munoz v. R.J. Reynolds Tobacco*

*Co.*, 896 F.2d 5, 8 (1st Cir. 1990).   In evaluating a summary judgment motion, the Court

indulges all reasonable inferences in favor of the non-moving party.   *O'Connor v. Steeves*, 994

F.2d 905, 907 (1st Cir. 1993).   When "a properly supported motion for summary judgment is

made, the adverse party 'must set forth specific facts showing that there is a genuine issue for

trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

## III.   Analysis

### A.   Plaintiff's Motion to Amend the Complaint

Plaintiff has moved to amend the complaint to include five new claims:  (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) failure to respond to a qualified written notice in violation of the Real Estate Settlement Procedures Act, (4) unfair and deceptive business practices in violation of Mass. Gen. Laws ch. 93A, and (5) unlawful foreclosure.  Defendant asserts that the motion to amend should be denied because the proposed amended complaint would be futile.

As a threshold matter, the Court must determine what standard of "futility" applies, given the posture of the case.  Typically, a plaintiff seeking to amend the pleadings after a summary judgment motion has been filed must prove not only that the amended complaint would survive a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), but also that the allegations are supported by substantial evidence.

However, the facts of this case are somewhat different from those of the typical case in a similar posture.  This case began on September 28, 2012, as an action in Massachusetts Land Court to try title to determine who, between plaintiff and defendant, holds superior legal title to the property located at 6 Fayette Street.  Defendant removed the case to this Court on October 15, 2012.  The Court held a scheduling conference on December 10, 2012.  At that conference, the Court indicated that any amendments to the pleadings should be made by June 17, 2013, and

set a deadline of July 1, 2013, for the completion of fact discovery.  On December 11, 2012—the day after the Court's scheduling conference, and before any discovery had been conducted—defendant moved for summary judgment.

The Land Court, where plaintiff first brought this action, is a court of limited jurisdiction. Thus, it appears that plaintiff's new claims could not have been brought in that court in the first instance.  Plaintiff filed his motion to amend within the deadline set by the Court, and long before the completion of fact discovery.  Under such circumstances, the court will not hold the allegations to the elevated "substantial evidence" standard.  Rather, the Court will determine whether the proposed complaint would survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### 1.      Breach of Contract Claim

Plaintiff seeks to add a claim for breach of contract.  In support of this claim, plaintiff alleges that RCS breached the terms of the mortgage contract by:

- failing to issue a valid default notice in accordance with applicable law;

- failing to advertise the foreclosure sale in compliance with Mass. Gen. Laws ch. 244, § 14;

- unlawfully attempting to enforce the terms of the mortgage; and

- seeking a deficiency against plaintiff that RCS is not owed, and failing to comply with Mass. Gen. Laws ch. 244, § 17B.

(Proposed Am. Compl. ¶ 81).

Plaintiff does not, however, identify any specific provisions of the mortgage contract that RCS has violated.  To prevail on a claim for breach of contract, plaintiff must do more than simply allege that there was a contract, and that defendant breached it.  Instead, plaintiff must

8

"describe[e], with substantial certainty, the specific contractual promise the defendant failed to keep." *Bean v. The Bank of New York Mellon*, 2012 WL 4103913, at *9 (D. Mass. Sept. 18, 2012). The proposed amended complaint does not describe with specificity any contractual promises that plaintiff alleges defendant did not keep. Instead, plaintiff's allegations appear to be premised entirely on alleged violations of Massachusetts law. Plaintiff nowhere alleges that the provisions of Massachusetts law that are at issue were incorporated into the mortgage contract, or that the contract itself created an independent obligation that defendant has breached.

The proposed amended complaint also alleges that MERS, the original mortgagee, breached the mortgage contract by "splitting" the interest in the note and mortgage in violation of the contract. In this allegation, the complaint points to a specific provision of the contract that was allegedly violated—¶ 20. Paragraph 20 of the mortgage contract states, in relevant part, "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Garber Aff., Ex. C). This Court reads ¶ 20 as establishing that the note and the mortgage could be sold without prior notice; it does not contain any prohibition on splitting the interests in the note and mortgage. This is consistent with the fact that Massachusetts is a "title theory" state; as a consequence, the law is clear that "a mortgage and the underlying note can be split." *Eaton v. Federal Nat'l Mortgage Assoc.*, 462 Mass. 569, 576 (2012); see also *Culhane v. Aurora Loan Servs.*, 708 F.3d 282 (1st Cir. 2013) ("The law contemplates distinctions between the legal interest in a mortgage and the beneficial interest in the underlying debt. These are distinct interests, and they may be held by different parties."). Thus, plaintiff has not stated a valid breach of contract claim based on the splitting of the mortgage and the note.

Plaintiff's subsequent assertion that "[i]f shown to be a valid assignee of Foregger's mortgage, RCS did not obtain the rights to enforce the mortgage terms after the MERS breach" fails for the same reason as plaintiff's other assertions.  It does not set forth any provision of the contract that defendant allegedly violated by foreclosing on plaintiff's property.

The amended complaint does not state a claim for breach of contract upon which relief can be granted.  Accordingly, the motion to amend as to the breach of contract claim this count will be denied as futile.

### 2.   Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Plaintiff seeks to add a claim for breach of the implied covenant of good faith and fair dealing.  In support of that claim, plaintiff alleges that RCS's actions in failing to comply with the terms of the mortgage and of applicable law, unlawfully foreclosing, and suing him for money not due to RCS all represent a breach of the implied covenant.

Every contract includes an implied covenant of good faith and fair dealing.  *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569-70 (2010).  The covenant requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to its fruits of the contract."  *Id.* at 570.  The covenant is not, however, meant to be "invoked to create rights and duties not otherwise provided for in the existing contractual relationship."  *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

The complaint does not anywhere set forth the specific rights of plaintiff or duties of defendant that defendants are alleged to have breached.  Nor does it allege any conduct by defendant that had the effect of destroying or injuring plaintiff's right to obtain the benefit of the contract.  Indeed, to the extent that plaintiff concedes—as he must for this claim—that a valid

contract existed between himself and defendant, it is difficult to understand how defendant could possibly have violated the implied covenant by foreclosing on plaintiff or suing him.  Plaintiff does not contest that he has defaulted on his mortgage, nor that the appropriate mortgagor has the authority to foreclose on him.  To the extent that RCS is the appropriate mortgagor—as it must be in order for a contractual obligation to exist between plaintiff and defendant—it was entitled to exercise the foreclosure rights provided to it by the terms of the mortgage, and to sue for any resulting deficiency.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Accordingly, the motion to amend as to this count will be denied as futile.

### 3. <u>Violation of RESPA Claim</u>

Plaintiff next seeks to add a claim for a violation of the Real Estate Settlement Procedures Act ("RESPA").  Plaintiff asserts that a September 27, 2012 letter he sent to defendant constituted a "qualified written request" under the act, and defendant violated RESPA by failing to answer certain questions set forth in that letter.

In relevant part, RESPA provides that certain mortgage loan servicers who receive a "qualified written request" ("QWR") for action or information from a borrower have an obligation to respond within a specified period of time.  12 U.S.C. § 2605(e)(1)-(2); *see also Mantz v. Wells Fargo Bank, N.A.*, 2011 WL 196915, at *4.  A "QWR" is defined as "a written correspondence, other than notice of a payment coupon or other payment medium supplied by the servicer, that –

> (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

18 U.S.C. § 2605(e)(1)(B).

When a borrower sends a valid QWR, the mortgage servicer must respond by acknowledging its receipt.  It must then, within a specified time, "complete an investigation and either provide the borrower with the requested information, or explain why the information cannot be provided and identify a point of contact to assist the borrower."  *Crepeau v. JP Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 150341, at *9 (D. Mass. Dec. 5, 2011); 12 U.S.C. § 2605(3)(2).  If a servicer fails to comply, a borrower may recover actual damages caused by the failure to respond.  12 U.S.C. § 2605(f).

Plaintiff alleges that defendant violated RESPA both by failing to answer questions related to the servicing of his loan and by failing to identify the owner of the debt.  To allege a valid claim under RESPA, a plaintiff must allege facts that show "(1) that the servicer failed to comply with the statute's [QWR] rules; and (2) that the plaintiff incurred actual damages as a consequence of the servicer's failure."  *Okoye v. Bank of New York Mellon*, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011) (internal citations omitted).

Defendant contends that plaintiff's claim fails for three reasons.  First, the amended complaint does not identify what provisions of RESPA the plaintiff alleges have been violated.  Second, it does not allege that the loan was a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602.  Third, defendant alleges that plaintiff's September 27, 2012 letter was not a QWR as defined by 12 U.S.C. § 2605(e)(1)(B).

The Court does not view these pleading deficiencies as sufficient to render the proposed

amendment futile.  While the RESPA violation is perhaps not perfectly pleaded, it is set forth

with sufficient specificity to provide defendant with notice of the conduct that is being

challenged.  The complaint alleges that defendant is a loan servicer subject to the requirements

of RESPA.  (Proposed Am. Compl. ¶¶ 89-90).  It alleges that, on September 27, 2012, plaintiff

sent a QWR letter to defendant and others requesting answers to questions related to the

servicing of his loan.  (Proposed Am. Compl. ¶ 53).  The complaint further alleges that, although

defendant purported to respond to the QWR on October 6, 2012, it failed to answer his questions

in the response.  (Proposed Am. Compl. ¶¶ 55-56).  Plaintiff has also alleged that, as a result of

this failure, he suffered actual damages.  (Proposed Am. Compl. ¶ 92).

Viewed in the light most favorable to the plaintiff, these facts are sufficient to state a

valid claim for a violation of RESPA.

Accordingly, amendment of the complaint as to the RESPA count will not be denied on

grounds of futility.

**4.     Claim for Violation of Mass. Gen. Laws ch. 93A**

Plaintiff next seeks to add a claim for a violation of Mass. Gen. Laws ch. 93A.  In

support of this claim, plaintiff alleges that defendant engaged in unfair and deceptive acts by:

- providing false and misleading documents to the Land Court during prior proceedings before that Court;

- unlawfully foreclosing on plaintiff's home;

- failing to respond to plaintiff's QWR letter in violation of RESPA;

- suing plaintiff for a deficiency that is not owed.

(Proposed Am. Compl. ¶ 97).

Mass. Gen. Laws ch. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Conduct is unfair or deceptive if it falls "within any recognized or established common law or statutory concept of unfairness." *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994).

To sustain a claim for a violation of Mass. Gen. Laws ch. 93A, a plaintiff must demonstrate that a defendant's conduct was unfair and deceptive, and that the conduct caused him injury. *Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*, 445 Mass. 790 (2006). "For a cause of action pursuant to chapter 93A to proceed, the violation . . . must be determined to be unfair or deceptive in and of itself[.]" *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 66 (1st Cir. 2009) ("To prove [a claim under chapter 93A], it is neither necessary nor sufficient that a particular act or practice violate common or statutory law.").

To the extent that plaintiff alleges a chapter 93A violation based on defendant's alleged misrepresentation to the Land Court, the amended complaint fails to allege a plausible claim. Plaintiff objects to the fact that, in response to a Massachusetts Land Court order that AHMSI demonstrate that it had standing to foreclose on plaintiff's property, defendant produced a March 28, 2011 document that purported to assign plaintiff's mortgage from MERS to RCS. Plaintiff cites to this conduct as an intentional misrepresentation by defendant. As a preliminary matter, it is unclear to the Court how this allegation even involved defendant; defendant was not a party to that case, and the production of the document was made by AHMSI, not defendant. Second,

plaintiff has not alleged any plausible injury that resulted.  The production of the document

resulted in the complaint in that case being dismissed against the plaintiff, and plaintiff does not

allege any particular harm that resulted from that proceeding.  Accordingly, plaintiff cannot base

his chapter 93A claim on defendant's conduct before the Land Court.

To the extent that the amended complaint alleges a chapter 93A violation based on other

conduct set forth in the complaint, it also fails to allege any plausible claim.  Plaintiff has not set

forth any allegations as to why defendant's actions were, in and of themselves, unfair or

deceptive.  In alleging a violation of chapter 93A, it is not enough to simply allege a contractual

or statutory violation.  A plaintiff must plead additional facts that suggest that a the violation was

unfair or deceptive.  The amended complaint contains no such allegations.

Accordingly, the motion to amend as to this count will be denied as futile.

### 5. <u>Unlawful Foreclosure Claim</u>

Finally, plaintiff seeks to add a claim for unlawful foreclosure.  Plaintiff contends that,

because defendant had no interest in his mortgage and note (and thus no lawful standing), it was

unlawful for defendant to foreclose on plaintiff's property on October 9, 2012.

This count is based on the same allegations as plaintiff's original claim to try title.  As set

forth below, defendant had a lawful interest in both plaintiff's mortgage and note, and therefore

had standing to foreclose on the mortgage.  Accordingly, the motion to amend as to this count

will be denied as futile.

### B. <u>Summary Judgment on Validity of the Foreclosure Sale</u>

The parties have filed cross-motions for summary judgment.  Both parties assert that they

are entitled to summary judgment on plaintiff's contention that the October 9, 2012 foreclosure

sale conducted by defendant was invalid and unlawful, and that plaintiff thus retains a superior

claim to title of the subject property.

### 1.   Legal Framework

In Massachusetts, when a mortgage grants the holder the power of sale—as this mortgage

does—the mortgagee may foreclose without obtaining prior judicial authorization.  *Culhane v.*

*Aurora Loan Servs. of Neb.*, 708 F.3d 282, 288 (1st Cir. 2013).  It may do so "upon any default

in the performance or observance of the mortgage, including . . . nonpayment of the underlying

mortgage note."  *Eaton v. Fed. Nat'l Mortg. Ass'n*, 462 Mass. 569, 580 (Mass. 2012).

Given the "substantial power that the [law] affords to a mortgage holder to foreclose

without immediate judicial oversight," courts require that "one who sells under a power of [sale]

must follow strictly its terms."  *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 646-47, 650-51

(2011).  One of those terms is the restriction that only a properly qualified mortgagee may

exercise this privilege.  *Id.*; Mass. Gen. Laws ch. 244 § 14.  A mortgagee has the authority to

exercise the power of sale only if it was the assignee of the mortgage at the time of the notice of

sale and the subsequent foreclosure sale.  *Ibanez*, 458 Mass. at 648.

A mortgagee seeking to conduct a foreclosure sale in Massachusetts after June 22, 2012

must also hold the promissory note or act as the authorized agent of the note holder.  *Eaton*, 462

Mass. 569, 587-89 (2012).  The "holder" of a promissory note is the person or entity who owns

that note.  *Id.* at 571 fn. 2.

Massachusetts law further provides that mortgagors are entitled to an opportunity to cure

a mortgage default.  Mass. Gen. Laws ch. 244 § 35(a).[3]  Pursuant to the statutory scheme, a

---

[3] All citations to Mass. Gen. Laws ch. 244 § 35A in this section cite to that law as in effect in 2009; the statute has since been amended.

mortgagee that seeks to accelerate or foreclose on a mortgage must notify the mortgagor of his

right to cure.  The notice must be "given by the mortgagee to the mortgagor," and must provide

the mortgagor with information including the nature of the default, the date by which the

mortgagor may cure the default, the name and address of the mortgagee, and the telephone

number for a representative of the mortgagee whom the mortgagor may contact.  Mass. Gen.

Laws ch. 244 § 35(b)-(c).

### 2.   Plaintiff's Challenges

Plaintiff contends that the foreclosure sale was invalid for three separate reasons.  First,

plaintiff contends that defendant did not hold valid record title to the mortgage at the time of the

foreclosure sale.  Second, plaintiff contends that defendant has never owned the promissory note

associated with the mortgage, and was not acting as an authorized agent of the holder of the note

at the time of the foreclosure sale.  Finally, plaintiff contends that defendant failed to comply

strictly with the notice requirements set forth in  Mass. Gen. Laws ch. 244 § 35.

### a.   Validity of RCS's title

Plaintiff contends that defendant was not the lawful assignee of the mortgage at the time

of the notice of sale and the subsequent foreclosure sale assignment.

Defendant initially argued that plaintiff does not have standing to challenge the

assignment.  The First Circuit has recently held that "a Massachusetts mortgagor has a legally

cognizable right under state law to ensure that any attempted foreclosure on her home is

conducted lawfully."  *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 290 (1st Cir.

2013).  This right means that plaintiff has "standing to challenge a mortgage assignment as

invalid, ineffective, or void."  *Id*. at 291.  A mortgagor does not, however, have standing to

challenge "shortcomings in an assignment that render it merely voidable at the election of one party . . . ." *Id.* Here, plaintiff alleges defects in the chain of assignment that he claims render the assignment from AHMSI to defendant void. Thus, plaintiff has standing to challenge the validity of the assignment.

Nevertheless, his argument fails. Plaintiff's challenge is based on a March 28, 2011 document purporting to assign the mortgage from MERS to RCS. Because this assignment was undertaken before the assignment from AHMSI to RCS that defendant relies upon in establishing an unbroken chain of title, plaintiff contends that it meant that AHMSI had no interest to confer, and thus both the assignment and the confirmatory assignment from AHMSI to RCS were invalid. In support of this contention, plaintiff points to an August 31, 2011 order by Judge Cutler of the Massachusetts Land Court. In that order, Judge Cutler appears to have relied on the validity of the March 28, 2011 assignment.

At oral argument, defendant represented to the Court that the March 28, 2011 assignment was itself a mistake. Indeed, based on the earlier assignment from MERS to AHMSI, it seems clear that MERS did not have the authority to assign the mortgage to RCS as of March 28, 2011. At the time the March 28, 2011 assignment was executed, the mortgage was held by AHMSI by virtue of the assignment recorded on December 8, 2009. Accordingly, any further lawful transfer of the mortgage could only have been from AHSMI to the new assignee.

The evidence before the Court indicates that the purported assignment is unrecorded, and outside the chain of legal title. It is thus irrelevant to the chain of title. Plaintiff has not set forth any evidence that the March 28 assignment is valid; rather, he seems to contend that, having relied on the assignment before the Land Court, defendant cannot now disclaim it. Particularly

in light of defendant counsel's representations that the purported assignment was executed in error, and that she attempted to correct the record with the Land Court once the error was recognized, this Court does not agree that the document "casts an inescapable cloud over the entire chain of title."  (Pl. Br. at 15).

Furthermore, even if the document were to be taken at face value, the chain of title would still end with RCS as the lawful assignee of the mortgage at the time of the notice of sale and the subsequent foreclosure sale assignment.  Plaintiff attempts to avoid this conclusion by arguing that the March 28 assignment is so suspicious that he is "entitled to obtain discovery on what other purported assignments of his mortgage . . . might be in RCS's files."  (Pl. Br. at 15). Plaintiff cannot survive summary judgment by simply conjecturing that there might be another assignment that discovery could potentially uncover.

The undisputed evidence establishes a clear chain of title from MERS, the original mortgage holder, to defendant, as of October 19, 2011.  The Notice of Sale was published on August 30, 2012, and the sale was held on October 9, 2012.  Defendant was therefore the lawful mortgagee of record at the time of the notice of sale and the foreclosure.

### b.    <u>Ownership of Foregger Note</u>

Plaintiff further contends that defendant neither owned the note nor acted as an authorized agent for the owner of the note.  Plaintiff accordingly asserts that defendant did not have standing to foreclose on the property, based on the Massachusetts Supreme Judicial Court's decision in *Eaton*.

Defendant does not claim to be the owner of the note.  Instead, defendant contends that it was authorized to act on behalf of the owner of the note.[4]  In support of this contention, defendant has submitted an affidavit certifying that RCS is the authorized agent of the holder of the promissory note.  (Aff. at Docket No. 55).  The affidavit further certifies that RCS was acting as the authorized agent of the holder of the note on the date of the first publication of the notice of sale.  (Aff. at Docket No. 55).

When confronted with the affidavit at oral argument, plaintiff refused to concede that it established standing under *Eaton*.  Rather, plaintiff continued to challenge standing on the ground that defendant had not produced any documents from the owner either (1) confirming ownership of the note or (2) stating that an agency relationship existed between the owner and defendant.

Plaintiff is correct that the statement of an agent is typically not sufficient to prove the existence of an agency relationship.  However, this Court reads *Eaton* as suggesting that an uncontested sworn statement by a mortgagee that it has the authority to act on behalf of a note holder is sufficient.  Indeed, in *Eaton*, the court indicated that the mortgagee "may establish that it either held the note or acted on behalf of the note holder at the time of a foreclosure sale by filing an affidavit in the appropriate registry of deeds. . . .  Such an affidavit may state that the mortgagee either held the note or acted on behalf of the note holder at the time of the foreclosure sale."  *Eaton*, 462 Mass. at 589 fn. 28.

---

[4] Defendant also contends that, because it has the note in its possession, it is the holder of the note under the Uniform Commercial Code, and is thus entitled to enforce the note pursuant to Mass. Gen. Laws ch. 106 § 3-301(I). Because defendant can adequately demonstrate that it was acting on behalf of the note's owner, the Court need not determine whether possession of the note is itself sufficient.

Defendant's affidavit appears to track perfectly with the affidavit suggested by the Supreme Judicial Court in *Eaton*.  Plaintiff has not set forth any basis to doubt the veracity of the affidavit.  Despite plaintiff's skepticism, there is no genuine dispute that defendant was acting on behalf of the note holder at all necessary times.  Defendant therefore qualified as a mortgagee under *Eaton*, and had standing to foreclose on plaintiff's property.

### c.      Notice of Right to Cure

Plaintiff also contends that defendant has not complied with Mass. Gen. Laws ch. 244 §35A, which requires a mortgagee to send a notice of default/right-to-cure letter to a mortgagor before accelerating or foreclosing on a mortgage.  Plaintiff does not appear to contest that AHMSI sent a right-to-cure letter on July 16, 2009.  Rather plaintiff points to two alleged defects in the letter, either of which he contends are sufficient to demonstrate that defendant did not "strictly comply" with the terms of the statute.  First, plaintiff asserts that the letter does not anywhere identify the mortgagee, as required by Mass. Gen. Laws ch. 244 § 35A.  Second, plaintiff asserts that AHMSI—the entity that sent the letter—was not the "mortgagee" at the time the letter was sent.  Although AHMSI was the mortgage servicer as of July 16, 2009, the mortgage was not formally assigned to AHMSI until November 25 of that year.  Thus, plaintiff asserts that the letter was not "given by the mortgagee to the mortgagor," as required by Mass. Gen. Laws ch. 244 § 35A.

Essentially, plaintiff claims that there were minor defects in the notice letter.  He does not claim that he was confused, prejudiced, or injured in any way by those defects.  Rather, plaintiff seeks the protection of the requirement that "one who sells under a power of [sale] must follow strictly its terms."  *Ibanez*, 458 Mass. at 650-51.

21

The law is currently unclear on whether the notice requirement of Section 35A is part of the Massachusetts "power of sale," and thus must be complied with strictly.  *Compare Courtney v. U.S. Bank*, 2013 U.S. Dist. LEXIS 16245, 2013 WL 452941, at *2 (D. Mass. Feb. 6, 2013) (finding a notice of default effective although it identified the original lender incorrectly) *and Payne v. U.S. Bank Nat'l Assoc.*, 2013 WL 1282235 (D. Mass. Mar. 28, 2013) (finding substantial compliance with the requirements of § 35A sufficient) *with Ross v. Deutsche Bank Nat'l Trust Co.*, 2013 U.S. Dist. LEXIS 47056 (D. Mass. Mar. 27, 2013) (stating that "[b]ecause the notice requirement is part of the Massachusetts statutory scheme regulating foreclosure, mortgagees seeking to foreclose must comply strictly with the notice requirement.").

The Court need not attempt to definitively answer this question.  Plaintiff's contentions—that the letter is defective because it does not identify the mortgagee and because AHMSI was not the mortgagee—are incorrect.  The statute requires that the letter include "the name and address of the mortgagee, or anyone holding thereunder, and the telephone number of a representative of the mortgagee whom the mortgagor may contact . . . ."  Mass. Gen. Laws ch. 244 § 35A(c)(4).  The notice letter provides the name, address, and telephone number of AHMSI in two different locations:  first, as the entity to be contacted to cure the default, and second, as the entity to contact to dispute either a calculation or the existence of a default.  (Longoria Aff., Ex. 1).  This disclosure is only insufficient if AHMSI is not, in fact, the "mortgagee," a defect that plaintiff has alleged—and this Court will address—separately.

Section 35A does not define "mortgagee."  However, the Massachusetts Division of Banks has promulgated regulations pursuant to the statute.  In those regulations, the term "mortgagee" is defined as

> an entity to whom property is mortgaged, the mortgage credit or lender including, but not limited to, mortgage servicers, lenders in a mortgage agreement and any agent, servant, or employee of the mortgagee or any successor in interest or assignee of the mortgagee's rights, interests, or obligations under the mortgage agreement.

209 C.M.R. 56.02.  In other words, the regulations make clear that the term "mortgagee" in Section 35A includes not only the owner of the mortgage, but also mortgage servicers and other entities acting on behalf of the owner.

As the mortgage servicer on July 16, 2009, AHMSI had the right to demand that plaintiff cure his payment default, and properly identified itself as the "mortgagee" in the notice of right to cure in compliance with Section 35A.  Thus, defendant had standing to foreclose on the property, and conducted its foreclosure in compliance with the notice requirements set forth in Mass. Gen. Laws ch. 244, § 35A.  Accordingly, defendant has superior title to the property, and is entitled to summary judgment on plaintiff's petition to try title pursuant to Mass. Gen. Laws ch. 240 §§ 1-5.     **C.     Summary Judgment on Defendant's Counterclaims**

Defendant has also moved for summary judgment on its five counterclaims.  Defendant provides only cursory briefing on these five claims, and plaintiff does not even address them in his opposition.  For most of these claims, defendant does not set forth the elements of the claim, let alone cite to specific facts in the record that demonstrate that there is no material factual dispute and it is entitled to judgment as a matter of law.  The Court cannot, based on the cursory briefing currently before it, determine whether any triable issues of fact exist on these counterclaims.  Accordingly, defendant's motion for summary judgment on its counterclaims will be denied without prejudice to its renewal at a later date.

**IV.**     **Conclusion**

For the foregoing reasons, the motion of defendant Residential Credit Solutions, Inc. for summary judgment is GRANTED in part and DENIED in part, the motion of plaintiff Douglas Foregger for summary judgment is DENIED, and plaintiff's motion to amend is GRANTED as to the RESPA claim and otherwise DENIED.

**So Ordered.**

 /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 21, 2013