**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **DOUGLAS FOREGGER,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-11914-FDS |
| **RESIDENTIAL CREDIT SOLUTIONS, INC.,** | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE THE AMENDED COMPLAINT**

**SAYLOR, J.**

This is an action arising from a home mortgage foreclosure. On October 9, 2012, Residential Credit Solutions, Inc. ("RCS") purchased plaintiff Douglas Foregger's home, located at 6 Fayette Street, Nantucket, Massachusetts, at a foreclosure sale. Foregger filed suit seeking a determination that he holds superior legal title to the property. RCS brought a number of counterclaims, including claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, judgment for possession and execution, and deficiency judgment. Foregger requested leave to file an amended complaint.

The parties cross-moved for summary judgment. On June 21, 2013, the Court issued a memorandum and order (1) granting summary judgment against Foregger's original claims, (2) denying summary judgment in favor of RCS's counterclaims without prejudice, and (3) granting leave for Foregger to amend the complaint to plead a claim under the Real Estate Settlement Procedures Act ("RESPA").

On September 25, 2013, RCS filed a second motion for summary judgment. Foregger filed an amended complaint on October 16, 2013, four months after he was granted leave to amend by the Court. Foregger also filed three motions to strike various affidavits proffered by RCS. RCS filed a motion to strike the amended complaint.

For the following reasons, RCS's motion for summary judgment will be granted in part and denied in part. The motion to strike the amended complaint will be denied. Foregger's motions to strike RCS's affidavits will be denied as moot.

**I.    Background**[1]

    **A.    Factual Background**

        **1.    Foregger's Mortgage**

Plaintiff Douglas Foregger received and recorded the deed to the property at 6 Fayette Street, Nantucket, Massachusetts, in June 2006. (Foregger Aff. ¶ 2). On June 22, 2007, Foregger executed a note in the amount of $1.8 million to American Home Mortgage. (Def. SMF ¶ 1; RCS Aff., Ex. A). To secure the note, Foregger granted a mortgage that same day to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for American Home Mortgage. (Def. SMF ¶ 2; RCS Aff., Ex. B). The mortgage was recorded in the Nantucket County Registry of Deeds on June 27, 2007. (Def. SMF ¶ 2; RCS Aff., Ex. B).

On November 25, 2009, an assignment was executed transferring Foregger's mortgage from MERS, as nominee for American Home Mortgage, to American Home Mortgage Servicing, Inc ("AHMSI"). (RCS Aff., Ex. D). On October 19, 2011, an assignment was executed transferring Foregger's mortgage from AHMSI to RCS. (RCS Aff., Ex. E). On

---

[1] The relevant facts summarized below are undisputed.

February 17, 2012, a confirmatory assignment was recorded, confirming the previously-recorded October 19, 2011, assignment to RCS.  (RCS Aff., Ex. F).

### 2.   Foreclosure Proceedings

At some time between 2007 and 2009, Foregger fell behind on his mortgage payments. On July 16, 2009, AHMSI sent him a 90-day Notice of Default.  (RCS Aff., Ex. G).

On October 14, 2011, RCS filed a Servicemembers Civil Relief Act complaint in the Land Court.  (Longoria Aff., Ex. A).  Judgment was entered by the Land Court on July 27, 2012.  (Longoria Aff., Ex. F).  Following the entry of judgment, RCS published a notice of sale of real estate in the Nantucket Inquirer & Mirror for three consecutive weeks:  August 30, September 6, and September 13, 2012.  (Def. SMF ¶ 15).  On August 31, RCS also sent a notice of sale to Foregger at the property address.  (Def. SMF ¶ 13, Ex. C).

On September 27, 2012, counsel acting on Foregger's behalf sent a letter to Homeward Residential, Inc.—the loan servicer prior to RCS—seeking information about the mortgage.  (Ex. L [Docket No. 23-3 at 39-60]).[2]  The letter stated that it was a Qualified Written Request ("QWR") under RESPA, to which RCS was required to respond.   (Ex. L [Docket No. 23-3 at 39-60]).  The letter was also allegedly sent to RCS and counsel for RCS.  (Ex. L [Docket No. 23-3 at 39-60]).   Foregger's counsel also sent a separate letter to counsel for RCS, seeking information about the mortgage.  (Longoria Aff., Ex. G).  That letter did not state that it was a

---

[2] Foregger did not submit new exhibits or clarify the previously submitted exhibits in connection with this second motion for summary judgment.  The previous exhibits were submitted in nine "Exhibits," many of which started mid-exhibit or contained multiple exhibits (some with exhibits to the exhibits).  For ease of reference, the Court will refer to the previous exhibits by letter, as well as by which of the nine "Exhibits" they appear in, and by page number.  For example, Exhibit L—which is found between pages 39 and 60 of "Exhibit 3" on the docket—will be referred to as "(Ex. L [Docket No. 23-3 at 39-60])."

QWR.  (*Id.*).  RCS responded to the letter on November 1, 2012.  (Longoria Aff., Ex. K).[3]

A foreclosure sale was initially scheduled for September 28, 2012, but later postponed and rescheduled for October 9.  (Def. SMF ¶ 18 ; Longoria Aff., Ex. I).  That foreclosure sale was held as scheduled, and the property was acquired by RCS for $1.36 million.  (Def. SMF ¶ 25; RCS Aff., Ex. J).  At the time of this decision, RCS had not taken possession of the property.

### B.       Procedural Background

On September 28, 2012, Foregger filed a petition to try title pursuant to Mass. Gen. Laws ch. 240 §§ 1-5 in the Massachusetts Land Court.  On October 15, 2012, RCS removed that matter to this Court.  RCS filed an answer with counterclaims on October 25, 2012.

The parties cross-moved for summary judgment.  On June 21, 2013, the Court issued a memorandum and order (1) granting summary judgment for RCS as to Foregger's original claims, (2) denying summary judgment in favor of RCS's counterclaims without prejudice, and (3) granting leave for Foregger to amend the complaint to plead a claim under RESPA.

On September 25, 2013, RCS moved for summary judgment on the remaining claims and counterclaims.  Foregger filed an amended complaint on October 16, 2013.  He also filed various motions to strike RCS's affidavits.  On October 21, 2013, RCS filed a motion to strike and dismiss the amended complaint.

## II.    Standard of Review

### A.       Motion to Strike a Complaint

If a plaintiff fails to comply with the Federal Rules of Civil Procedure or a court order, "a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).  "The

---

[3] Foregger also alleges he sent a letter to RCS on November 1, 2010.  (Pl.'s Opp. at 4).

choice of sanctions for failing to comply with a court order lies with the district court." *Velazquez-Rivera v. Sea-Land Serv., Inc.*, 920 F.2d 1072, 1075 (1st Cir. 1990). In deciding whether to dismiss a claim under Rule 41(b), "the power of the court to prevent undue delays must be weighed against the policy of the law favoring the disposition of cases on the merits." *Richman v. General Motors Corp.*, 437 F.2d 196, 199 (1st Cir. 1971).

      B.      **<u>Summary Judgment</u>**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

### III.     RCS's Motion to Strike the Amended Complaint

Foregger was granted leave to amend the complaint to add a RESPA claim on June 21, 2013. That complaint was not filed until October 16, almost four months later. RCS has moved to strike the complaint under Rule 41(b). Although Foregger has not even attempted to give any reasons as to why he did not file an amended complaint in a more timely fashion, RCS does not appear to have been prejudiced by the delay. Accordingly, and keeping in mind "the policy of the law favoring the disposition of cases on the merits," *Richman*, 437 F.2d 196 at 199, the motion to strike the amended complaint will be denied.

### IV.     RCS's Motion for Summary Judgment

#### A.     Foregger's RESPA Claim

In relevant part, RESPA provides that certain mortgage servicers who receive a "qualified written request" ("QWR") for action or information from a borrower have an obligation to respond within a specified period of time. 12 U.S.C. § 2605(e)(1)-(2) (2011); *see also Mantz v. Wells Fargo Bank, N.A.*, 2011 WL 196915, at *4 (D. Mass. Jan. 19, 2011). A "QWR" is defined as:

> a written correspondence, other than notice of a payment coupon or other payment medium supplied by the servicer, that—
>
> (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower

18 U.S.C. § 2605(e)(1)(B).[4]

When a borrower sends a valid QWR, the mortgage servicer must respond by acknowledging its receipt within 20 days. 12 U.S.C. § 2605(e)(1)(A). It must then, within 60 days, "complete an investigation and either provide the borrower with the requested information, or explain why the information cannot be provided and identify a point of contact to assist the borrower." *Crepeau v. JP Morgan Chase Bank, N.A.*, 2011 WL 6937508, at *3 (D. Mass. Dec. 5, 2011); 12 U.S.C. § 2605(e)(2)(C). If a servicer fails to comply, a borrower may recover actual damages caused by the failure to respond. 12 U.S.C. § 2605(f).

To prove a RESPA claim, a plaintiff must show "(1) that the servicer failed to comply with the statute's [QWR] rules; and (2) that the plaintiff incurred actual damages as a consequence of the servicer's failure." *Okoye v. Bank of New York Mellon*, 2011 WL 3269686, at *17 (D. Mass. Jul. 28, 2011) (internal citations omitted). "In order to plead 'actual damages' sufficiently, a plaintiff must allege specific damages *and* identify how the purported RESPA violations caused those damages." *Id.* (collecting cases) (emphasis in original).

RCS contends that Foregger has failed to establish actual damages. Foregger contends that he suffered such damages, including "emotional distress as well as added costs, expenses, and attorney's fees" from "trying to determine the legal ownership of his mortgage loan, whether it was being lawfully serviced, whether various costs, expenses and fees assessed to his account were lawful and properly applied, and, at bottom, whether a stranger was attempting an unlawful

---

[4] All citations to RESPA in this section cite to that law as in effect at the time Foregger's letters were sent; the statute has since been amended by the Dodd-Frank Wall Street Reform & Consumer Protection Act of 2010, Pub. L. 111-203, 124 Stat. 1376 (Jul. 21, 2010). *See Fenske-Buchanan v. Bank of America, N.A.*, 2012 WL 1204930, at *3 (W.D. Wash. Apr. 11, 2012).

foreclosure on his property." (Pl.'s Opp. at 11-12).[5]

Foregger has not presented evidence showing that his emotional distress and time off from work were actually caused by the alleged RESPA violation. In his affidavit, he states that the alleged RESPA violation forced him to work with his attorneys and take time off from work "to try and figure out not only the legal ownership of my loan, how, when and what basis there was for the expenses, fees and charges that have been assessed to my loan account by RCS or any parties that were servicing my loan before RCS got involved." (Foregger Aff. ¶ 20). His affidavit states that as a result, he was "severely distracted by the stress and anxiety associated with these matters" and "experience[d] emotional distress which was/is evidenced by feelings of worry, anxiety, frustration, anger, depression, hopelessness, nervousness, despair, shame, stress, discord and friction with [his] wife . . . and fear over the then-pending foreclosure proceedings that RCS was initiating on the premises." (Foregger Aff. ¶¶ 21-22).

In sum, Foregger contends that he suffered actual damages from RCS's failure (1) to tell him who the legal owner of his mortgage loan was, (2) to tell him the legal basis for its servicing of his loan, and (3) to give him an accounting of the servicing fees on his loan.

First, before the Dodd-Frank amendments to RESPA, a borrower had no right to learn, from the servicer, the identity of the owner of the mortgage note. *Fazio v. Experian Information*

---

[5] As an initial observation, "attorney's fees for bringing a RESPA suit are not actual damages under the statute." *Kassner v. Chase Home Finance, LLC*, 2012 WL 260392, at *7 (D. Mass. Jan. 27, 2012) (collecting cases); *see also* 18 U.S.C. §§ 2605(f)(1)(A), (3) (differentiating "actual damages" and "costs" such as attorney's fees). Foregger contends that the fees and expenses were caused by RCS's alleged RESPA violation and were not part of bringing the RESPA suit itself. However, those costs were all accrued as part of the litigation over foreclosure, and therefore they were not caused by the alleged RESPA violation.

Additionally, the Court assumes "actual damages" caused by a RESPA violation includes emotional distress. *See Moore v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 1773647, at *3 (D.N.H. Apr. 25, 2013); *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010).

*Solutions, Inc.*, 2012 WL 2119253, at *2 (N.D. Cal. Jun. 11, 2012). To the extent that Foregger claims actual damages from not receiving that information from RCS, those damages were not caused by the alleged RESPA violation.

Second, the letter from RCS responding to Foregger's request for information contained two exhibits showing the assignment of his mortgage to RCS. (Longoria Aff., Ex. K). Foregger does not contend he did not receive those exhibits. The three assignments clearly state that RCS was assigned Foregger's mortgage by AHMSI and MERS. (RCS Aff., Exs. D, E, F). To the extent that Foregger claims actual damages from not receiving that information from RCS, those damages were not caused by the alleged RESPA violation.

Third, the letter from RCS responding to Foregger's request for information also contained exhibits containing his mortgage-loan history and escrow statements. (Longoria Aff., Ex. K). According to the letter, those documents explain the history of Foregger's loan, including any servicing fees, advances, or charges on the loan. (*Id.*). Although copies of those documents have not been provided as part of the summary judgment motions, Foregger has not contended that he did not receive these documents. He also has not contended that he was aware of any errors in the accounting on his mortgage loan. Therefore, he cannot claim damages from an alleged failure of RCS to give him information on his servicing fees. *See Santander Bank, Nat. Ass'n v. Sturgis*, 2013 WL 6046012, at *14 (D. Mass. Nov. 13, 2013) (no damages, even assuming a RESPA violation, where plaintiffs "admit that they were not aware of any errors in the [defendant's] accounting for the [mortgage] loan").

Finally, Foregger has not shown that his costs and emotional distress were a result of RCS's purported RESPA violations. *See Urbon v. JPMorgan Chase Bank, N.A.*, 2013 WL

1144917, at *3 (D. Mass. Mar. 18, 2013); *Okoye*, 2011 WL 3269686, at *18. Instead, Foregger admits his stress and anxiety began with the Land Court actions filed by AHMSI and RCS. (Foregger Aff. ¶¶ 7-8, 16). For such damages to be caused "as a result of" RCS's alleged RESPA violation, Foregger must show they were somehow enhanced or exacerbated by RCS's conduct. *See Moore v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 1773647, at *3 (D.N.H. Apr. 25, 2013) (no proof that emotional distress that began before QWR was sent was caused by RESPA violation). The affidavit does not distinguish damages enhanced or exacerbated by the alleged RESPA violation from those suffered as a result of the impending foreclosure on his property.

Accordingly, RCS's motion for summary judgment on Foregger's RESPA claim will be granted.[6]

### B. RCS's Breach-of-Contract Counterclaim

RCS has moved for summary judgment on its breach-of-contract counterclaim. In order to prove breach of contract, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted); *see also Loranger Const. Corp. v. E.F. Hauserman, Co.*, 1 Mass. App. Ct. 801, 801 (1973). It is undisputed that the mortgage note constituted a contract and that Foregger defaulted on his mortgage payments in 2009. (RCS Aff., Ex. G). Although Foregger contends that RCS did not specify what contractual provision he violated, the mortgage note obligates him to pay back the note in monthly installments. (RCS Aff., Ex. A). When he failed to make the

---

[6] RCS also contends that it did not receive Foregger's letters directly, that the letters were not QWRs, and that it responded properly to the letters assuming they were QWRs. The Court does not reach these issues.

monthly payments, he breached his duties under the mortgage note.[7]

Foregger further contends that he does not owe RCS money because it is not the owner of the mortgage note. The Court has already decided that RCS was the lawful mortgagee of record at the time of the notice of sale and the foreclosure, and that RCS acted as an authorized agent for the owner of the note. *Foregger v. Residential Credit Solutions, Inc.*, 2013 WL 3208596, at *11 (D. Mass. Jun. 21, 2013). As a servicer, RCS acts on behalf of the owner of the debt. *See Peoples Mortg. Co. v. Federal Nat'l Mortg. Ass'n*, 856 F. Supp. 910, 917-18 (E.D. Pa. 1994). RCS, as the agent of the debt holder, has the right both to collect on the debt and to foreclose on the mortgage. *See* Mass. Gen. Laws ch. 106 §§ 1-201(20), 3-301; *see also* Mass. Gen. Laws ch. 244 § 17B (requiring notice of *mortgagee's* intention to pursue a deficiency after foreclosure); *In re O'Kelley*, 2010 WL 3984666, at *1 (D. Haw. Oct. 8, 2010). It would be odd, to say the least, for a servicer to be authorized to collect mortgage payments and foreclose on a mortgaged property but not to pursue a deficiency on the debt after foreclosure.

Finally, Foregger contends that RCS has not established damages from his breach of contract. In an affidavit, RCS alleges that the total amount owed on Foregger's mortgage note as of the foreclosure was $2,301,363.46, and the current litigation fees and costs total $26, 938.41. (RCS Aff. ¶¶ 22-23). Foregger's property was purchased for $1,360,000 at the foreclosure sale. (RCS Aff., Ex. J). Assuming those numbers are accurate, Foregger would owe RCS a deficiency of $970,297.87. (RCS Aff. ¶ 24).

The numbers for the total amount owed on Foregger's mortgage note and RCS's

---

[7] A mortgagee pursuing a deficiency action after foreclosure must give notice of the intent to seek a deficiency to the mortgagor. Mass. Gen. Laws ch. 244 § 17B. It is undisputed that Foregger received this notice from RCS as required by statute. (Def. SMF ¶ 13; Pl. SMF ¶ 13; Longoria Aff., Ex. C).

litigation costs are not supported by any underlying evidence admissible at trial. RCS has submitted no calculation of where those totals come from. The affidavit states that it is based on review of RCS's business records, but those records have not been provided. The only document that states how much is owed on the mortgage note, AHMSI's notice of default, has the amount redacted. (RCS Aff., Ex. G).

In deciding a motion for summary judgment, "Rule 56(e) charges the district court with ensuring that the evidence proffered . . . has a foundation sufficient to allow it to reach a jury." *Schubert v. Nissan Motor Corp. in U.S.A.*, 148 F.3d 25, 32 (1st Cir. 1998). Summary judgment as to the entirety of RCS's breach-of-contract counterclaim is therefore not appropriate at this time. Foregger, however, does not dispute that he was in default on his mortgage loan. Accordingly, RCS's motion will be granted as to liability on the breach-of-contract counterclaim, and denied without prejudice as to its renewal as to damages.[8]

### C. RCS's Implied-Covenant Counterclaim

RCS has also moved for summary judgment on its counterclaim for breach of the implied covenant of good faith and fair dealing. In Massachusetts, "[t]he covenant of good faith and fair dealing is implied in every contract." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). "Such a covenant requires 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Blank v. Chelmsford OB/GYN, P.C.*, 420 Mass. 404, 407 (1995) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-72 (1991)). In sustaining such a

---

[8] RCS also moved for summary judgment on the theory of unjust enrichment. As RCS conceded at oral argument, the equitable remedy for unjust enrichment is only available if an adequate remedy at law does not exist. *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005). The damages RCS claims on a theory of unjust enrichment are the same damages it claims on the breach of contract theory. Accordingly, RCS's motion for summary judgment as to the unjust enrichment claim will be denied.

claim, "the plaintiff has the burden of proving a lack of good faith." *T.W. Nickerson, Inc. v. Fleet Nat. Bank*, 456 Mass. 562, 570 (2010).

RCS contends that it has established Foregger's bad faith by demonstrating that he "failed to pay the Foregger Mortgage even though he had the resources to do so." (Def. Mem. at 16). However, the violation of the implied covenant of good faith and fair dealing "usually requires more than a simple breach." *Targun Grp. Int'l Inc. v. Sherman*, 76 Mass. App. Ct. 421, 435 (2011). A violation usually "requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (discussing Massachusetts law).

Assuming that all of RCS's factual allegations are true, all that it has established is that Foregger could have made his mortgage payments but failed to do so. This, without more, only shows a simple breach of contract. RCS has not alleged that Foregger had any improper motive, acted in bad faith, or attempted to unfairly leverage the contract terms to secure undue economic advantage. RCS has also cited no authority for the proposition that defaulting on a mortgage, without more, violates the implied covenant of good faith and fair dealing. Accordingly, RCS's motion for summary judgment on its good faith and fair dealing counterclaim will be denied.

### D.    RCS's Possession Counterclaim

RCS has moved for summary judgment on its counterclaim for possession. "In a summary process action for possession after foreclosure by sale, the plaintiff is required to make a prima facie showing that it obtained a deed to the property at issue and that the deed and affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded." *Bank of New York v. Bailey*, 460 Mass. 327, 334 (2011). RCS has already shown it legally

foreclosed on and purchased Foregger's property.  *Foregger*, 2013 WL 3208596, at *9-13; (Longoria Aff., Exs. C, E, J, L).

Foregger contends that an action for possession must be brought in the District or Housing Courts of Massachusetts, and therefore cannot be brought in federal court.  The Massachusetts summary process statute states that "[n]o person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law."  Mass. Gen. Laws ch. 184 § 18.

Even if RCS's possession claim, brought as a compulsory counterclaim under Rule 13(a), does not count as a proceeding "authorized by law," Foregger's contention would still fail. "While the enabling statute may restrict other state courts' jurisdiction, 'a grant of exclusive jurisdiction by a state legislature cannot divest a federal court of subject matter jurisdiction.'" *Sheehy v. Consumer Solutions 3, LLC*, 2013 WL 1748442 (D. Mass. Apr. 22, 2013) (quoting *Doe v. Fournier*, 851 F. Supp. 2d 207, 219 (D. Mass. 2012)) (internal alteration omitted); *see also Marshall v. Marshall*, 547 U.S. 293, 313-14 (2006) ("[A] State cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction.") (internal quotations omitted).

This Court has jurisdiction over RCS's possession counterclaim because Foregger and RCS are citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  Accordingly, RCS's motion for summary judgment on its possession claim will be granted.

**V.      Foregger's Motions to Strike RCS's Affidavits**

Foregger has moved to strike all of RCS's affidavits.  While he expresses several

concerns about the admissibility, veracity, and authenticity of the affidavits themselves, it does not appear that he contests the validity of the exhibits attached to those affidavits. Because none of the foregoing analysis turns on the statements set forth in RCS's affidavits, as opposed to its exhibits, the motions to strike will be denied as moot.

## VI.   Conclusion

For the foregoing reasons:

1. Defendant's motion to strike the plaintiff's amended complaint is DENIED.

2. Defendant's motion for summary judgment is GRANTED as to plaintiff's RESPA claim; GRANTED as to liability as to defendant's breach-of-contract counterclaim, and DENIED without prejudice as to damages as to that counterclaim; DENIED as to defendant's counterclaim for breach of the implied covenant of good faith and fair dealing, and GRANTED as to defendant's possession claim.

3. Plaintiff's motions to strike defendant's affidavits are DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  December 5, 2013                     United States District Judge