# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DOUGLAS FOREGGER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-11914-FDS |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

# MEMORANDUM AND ORDER ON DEFENDANT'S
# MOTION FOR DAMAGES AND PLAINTIFF'S MOTION TO STRIKE

**SAYLOR, J.**

This is an action arising from a home mortgage foreclosure. On October 9, 2012, defendant Residential Credit Solutions, Inc. ("RCS") purchased plaintiff Douglas Foregger's home, located at 6 Fayette Street, Nantucket, Massachusetts, at a foreclosure sale. Plaintiff filed suit seeking a determination that he holds superior legal title to the property. Defendant brought a number of counterclaims, including claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and possession. After two rounds of motion practice, the Court granted summary judgment to defendant on its breach-of-contract counterclaim, but denied summary judgment without prejudice as to the claim's damages.

Defendant has moved for summary judgment as to its breach-of-contract damages. Plaintiff has moved to strike the affidavits defendant filed in support of its motion. For the following reasons, plaintiff's motion to strike will be denied. Defendant's motion for summary judgment as to its breach-of-contract damages will be granted.

I.      **Background**

   A.      **Factual Background**

Plaintiff Douglas Foregger bought the property at 6 Fayette Street, Nantucket, Massachusetts, in June 2006. (Docket No. 85, Ex. A ¶ 2).[1] On June 22, 2007, Foregger executed a note in the amount of $1.8 million to American Home Mortgage. (Docket No. 79, Ex. A). To secure the note, Foregger granted a mortgage that same day to Mortgage Electronic Registration Systems, Inc. ("MERS"). (*Id.*, Ex. B). Foregger's mortgage was assigned twice: on November 25, 2009, from MERS to American Home Mortgage Servicing, Inc. ("AHMSI"); and on October 19, 2011, from AHMSI to RCS. (Docket No. 79, Exs. D, E).

In April 2009, Foregger fell behind on his mortgage payments. On July 16, 2009, AHMSI sent him a 90-day Notice of Default. (Docket No. 79, Ex. G). A foreclosure sale was held on October 9, 2012; the property was acquired by RCS for $1.36 million. (Docket No. 79, Ex. J).

   B.      **Procedural Background**

On September 28, 2012, Foregger filed a petition to try title pursuant to Mass. Gen. Laws ch. 240 §§ 1-5 in the Massachusetts Land Court. On October 15, 2012, RCS removed that matter to this Court. RCS filed an answer with counterclaims on October 25, 2012.

The parties cross-moved for summary judgment. On June 21, 2013, the Court issued a memorandum and order (1) granting summary judgment for RCS as to Foregger's original claims, (2) denying summary judgment in favor of RCS's counterclaims without prejudice, and (3) granting leave for Foregger to amend the complaint to plead a claim under RESPA.

---

[1] For ease of reference, all citations are to entries on the docket.

On September 25, 2013, RCS moved for summary judgment on the remaining claims and counterclaims. Foregger filed an amended complaint on October 16, 2013. He also filed various motions to strike RCS's affidavits. On October 21, 2013, RCS filed a motion to strike and dismiss the amended complaint.

On December 5, 2013, the Court granted summary judgment in defendant's favor as to plaintiff's remaining claims. The Court also granted summary judgment in defendant's favor as to its possession and breach-of-contract counterclaims, but denied summary judgment without prejudice as to the damages from the breach-of-contract counterclaim.

On January 1, 2014, defendant moved for summary judgment on the damages from the breach-of-contract claim.[2] Defendant submitted various affidavits in support of its claims. Plaintiff has moved to strike defendant's affidavits.

C.      **Defendant's Affidavits**

The affidavits from defense counsel allege that (1) defendant acquired the Nantucket property at the October 9, 2012 foreclosure sale for $1,360,000; (2) defendant has incurred foreclosure fees and costs of $16,912.29; and (3) as of March 4, 2014, defendant has incurred attorneys' fees of $37,790.56. (Docket No. 100 ¶¶ 3, 4, 6; *Id.*, Exs. A, B; Docket No. 110, Ex. A; Docket No. 112 ¶ 4; *Id.*, Ex. A). The affidavit from Marlon Frazier, assistant vice president of servicing for defendant, alleges that plaintiff's total debt on the mortgage, including the balance of the unpaid loan, interest, late fees, taxes, insurance, and other expenses, was $2,301,363.46 as of October 9, 2012. (Docket No. 101 ¶ 11; *Id.*, Exs. A-D).

---

[2] Defendant has also moved for a writ of assistance for possession of the Nantucket property, an issue not addressed by this order.

## II. Standard of Review

### A. Summary Judgment

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### B. Motion to Strike

Under Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The "requisite personal knowledge must concern facts a opposed to conclusions, assumptions, or

4

surmise." *Livick v. The Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008) (quoting *Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001)). "On a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest." *Perez*, 247 F.3d at 315 (quoting *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992)). In making this inquiry, "personal knowledge is the touchstone." *Id.*

### III. Motion to Strike Affidavits

Defendant relies on its affidavits to prove the amount of damages from its breach-of-contract counterclaim. Therefore, the Court will first address plaintiff's motions to strike, as the "rulings [on those motions will] define the record on which summary judgment rests." *Livick*, 524 F.3d at 28.

#### A. Affidavit of Marlon Frazier

Plaintiff contends the Frazier affidavit is inadmissible for several reasons. First, plaintiff contends that Frazier is not credible because he was disbarred by the state bar of Texas. Second, he contends Frazier lacks the requisite personal knowledge to support the affidavit. Third, he contends that the documents attached to the Frazier affidavit are inadmissible hearsay.

##### 1. Frazier's Credibility

"[I]f the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied . . . [if] this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact." 10A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2726 (3d ed.); *see also Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158-59 (Fed. Cir. 2004); *United States v. Real Property Located at 3234 Washington Ave. North, Minneapolis,*

*Minn.*, 480 F.3d 841, 845 (8th Cir. 2007). Plaintiff's specific basis for impeaching Frazier is that he is a former attorney in Texas who was suspended twice before being disbarred on May 12, 2011. (Pl. Opp. at 6-7). Plaintiff offers, as proof, the records on the State Bar of Texas website, www.texasbar.com. He offers no other specific bases for doubting Frazier's credibility.[3]

Under Fed. R. Evid. 608, a court may allow inquiry into "specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness" on cross-examination. Fed. R. Evid. 608(b). Several courts have held that Rule 608(b) allows cross-examination concerning a witness's disbarment or suspension from the practice of law. *See Willingham v. City of San Leandro*, 368 Fed. Appx. 845, 847 (9th Cir. 2010) (citing *United States v. Jackson*, 882 F.2d 1444, 1449 (9th Cir. 1989)); *United States v. Weichert*, 783 F.2d 23, 26 (2d Cir. 1986) (per curiam)*; United States v. Whitehead*, 618 F.2d 523, 529 (4th Cir. 1980).

However, Rule 608's proscription is not mandatory. *See* Fed. R. Evid. 608(b) (stating that the court "may" allow inquiry into specific instances of a witness's conduct). "[A] trial court's discretion to determine the scope and extent of cross-examination [under Rule 608(b)] is broad." *United States v. Shinderman*, 515 F.3d 5, 16 (1st Cir. 2008). Additionally, any discretion a court has in admitting inquiry into specific instances of a witness's conduct is "subject to the overarching need to balance probative worth against prejudicial impact." *Id.* at 16. "That balancing function is spelled out in Federal Rule of Evidence 403, which states in pertinent part that relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Id.* at 16-17.

---

[3] Plaintiff previously moved to strike other affidavits from Frazier because of technical defects or typographical errors. None of those contentions apply to the affidavit currently at issue.

In this context, Frazier's two suspensions and subsequent disbarment in Texas have virtually no probative value. His affidavit is limited to authenticating documents produced by defendant and performing mathematical calculations from the figures in those documents. Whatever problems led to his disbarment, there is no evidence that they would affect his ability to review the appropriate documents and perform those mathematical calculations. In addition, plaintiff has not indicated why Frazier was disbarred.[4] It is therefore unclear if the conduct that resulted in Frazier's disbarment is actually probative of his character for truthfulness. That extremely slight probative value is outweighed by the unfair prejudice of inquiring into his disbarment.

Finally, attacking the credibility of a witness only defeats summary judgment if it "presents [a] dispute over a genuine issue of material fact." 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2726. The only remaining material facts to be determined are the damages plaintiff owes. Frazier's disbarment raises no disputes over those facts, and plaintiff presents no other specific facts suggesting that the Frazier affidavit or the attached documents are incorrect.

### 2. Frazier's Personal Knowledge

Plaintiff next contends that Frazier does not have personal knowledge of the factual statements in the affidavit.[5] Frazier specifically avers that he has "personal knowledge of the facts and circumstances" in the affidavit, and has "reviewed and [is] familiar with [defendant's] business records pertaining to this matter." (Docket No. 101 ¶ 3). He also states that he is defendant's assistant vice-president of servicing. (*Id.* ¶ 1). The remainder of the affidavit is a

---

[4] Disbarment judgments are public records in Texas. Tex. R. of Disciplinary P. 2.16.

[5] Plaintiff also contends that Frazier does not explain why plaintiff owes money to defendant instead of the holder of plaintiff's loan. That contention is addressed below.

description of each of the attached documents and a mathematical calculation using the numbers in those documents. (*See id.* ¶¶ 6-14). That is sufficient foundation for an assertion of personal knowledge of the records and defendant's record-keeping practices. *See United States v. Sayer*, 450 F.3d 82, 88 (1st Cir. 2006) (affirming summary judgment on mortgage deficiency based on "sworn declaration stating the amount owed based on [plaintiff's] business records and the . . . affiant's personal knowledge of the [defendant's] loan account" (internal alterations omitted)).

### 3. **Hearsay Objection**

Finally, plaintiff contends that the documents attached to the Frazier affidavit are inadmissible hearsay. Defendant contends the documents are admissible because they qualify as a record of a regularly-conducted business activity under Fed. R. Evid. 803(6), an exception to the hearsay rule. A record qualifies under that exception if: (1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business"; (3) "these conditions are shown by the testimony of the custodian or another qualified witness"; and (4) "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

The Frazier affidavit states the documents at issue fulfill the requirements of Rule 803(6). (Docket No. 101 ¶ 4). Plaintiff contends that the affidavit is "clearly false" because Frazier cannot have personal knowledge of or authenticate information about his mortgage prior to October 19, 2011, when defendant was assigned the mortgage. (Pl. Opp. at 9). Essentially, plaintiff contends that the information is hearsay within defendant's records and is therefore not

admissible.[6] Defendant contends that even if those records were from its predecessors, they satisfy Rule 803(6) because they are incorporated into its own records.

As the First Circuit has recognized, "whether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception is not an issue upon which this circuit has reached a uniform conclusion." *United States v. Savarese*, 686 F.3d 1, 12 (1st Cir. 2012). For example, in *F.T.C. v. Direct Marketing Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010), the court affirmed the decision to admit records that were "so intimately integrated into [the parties'] records that they were reliable enough to be admissible." 624 F.3d at 16 n.15. In contrast, in *United States v. Patrick*, 248 F.3d 11 (1st Cir. 2001), the court found that anonymous tips contained in police notes were too untrustworthy to be admissible as business records under Rule 803(6). 248 F.3d at 22.

Other First Circuit cases also point to reliability and trustworthiness as the proper metric when dealing with records within records. *Compare Belber v. Lipson*, 905 F.2d 549, 552 (1st Cir. 1990) ("mere custody by [witness] of medical records of another doctor does not incorporate them into [the witness's] business records") *with United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992) ("The fact that the [hearsay evidence] . . . had earlier been the record of a different business . . . is irrelevant. Because it was relied upon by the [witness], the . . . record was integrated into the records of the [witness].").

The information in the documents in this case is from prior servicers, and has been integrated into defendant's records. Plaintiff has provided no specific facts showing that the

---

[6] Plaintiff also contends Frazier does not have the requisite personal knowledge of defendant's record-keeping procedures. There is no evidence to suggest that allegation is true. And Frazier need not be "the person who actually prepared the record. . . . The rule simply requires that the witness be one who can explain and be cross-examined concerning the manner in which the records are made and kept." *United States v. Cameron*, 699 F.3d 621, 641 n.10 (1st Cir. 2012).

records are unreliable or untrustworthy. The documents attached to the Frazier affidavit are therefore admissible under Rule 803(6).[7]

Accordingly, plaintiff's motion to strike will be denied as to the Frazier affidavit.[8]

B. **Affidavits of Reneau Longoria**

Plaintiff contends the Longoria affidavits must be struck on two grounds. First, he contends that there is no legal authority for defendant to request attorneys' fees in this case. Under Massachusetts law, reasonable attorneys' fees may be recovered "where the contract between the parties provides for their payment, as in the case of foreclosure of mortgages or in agreements of indemnity or contracts to advance money." *Leventhal v. Krinsky*, 325 Mass. 336, 341 (1950); *see also Carter v. Warren Five Cents Sav. Bank*, 409 Mass. 73, 80 (1991) ("There is no doubt that the parties may provide in an agreement that, in certain circumstances, one of them may be obligated to pay the other's attorney's fees, incurred in asserting rights under the agreement.").

Paragraph 7(E) of the mortgage note states:

> If the Note Holder has required [the mortgagee] to pay immediately in full . . . , the Note Holder will have the right to be paid back by [the mortgagee] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

---

[7] A majority of the courts of appeals are in accord with this position, finding that "a business record made (in whole or in part) by a third party, but incorporated into the records of another entity, [are] thereby 'made' by the entity, and thus [are] admissible if the other requirements of Rule 803(6) are satisfied." *Savarese*, 686 F.3d at 12 n.8 (collecting cases from the Second, Ninth, Tenth, Eleventh, and D.C. Circuits); *see also Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999) (holding the same and collecting cases from the Third, Fifth, and Ninth Circuits).

[8] Plaintiff also requests an evidentiary hearing to allow him to cross-examine Frazier. However, summary judgment may be granted without an evidentiary hearing "if no dispute over material fact exists and a trial or hearing would not enhance [the court's] ability to decide the issue." *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988). No evidentiary hearing is required in this case.

(Docket No. 79, Ex. A). Because plaintiff was sent a 90-day notice to cure that required him to repay the mortgage loan in full, (Docket No. 79, Ex. G), defendant's request for attorneys' fees is authorized by the mortgage note.[9]

Second, plaintiff contends that the requested attorneys' fees are not appropriately documented. "[T]he absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Castaneda-Castillo v. Holder*, 723 F.3d 48, 79 (1st Cir. 2013) (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984)). "Records that include the different tasks each attorney performed, the total number of hours billed, the billing rate for those hours, the date on which each task[] was performed, and the amount of time spent on each task generally fulfill this requirement." *Id.*

Defendant has submitted time records in the form of invoices from defense counsel detailing the tasks each attorney performed, the total number of hours billed, the billing rate for those hours, the date each task was performed, and the amount of time spent on each task. (Docket No. 100, Ex. A; Docket No. 110, Ex. A; Docket No. 112, Ex. A). Those records are sufficient to prove the attorneys' fees defendant incurred in connection with this litigation. *See Kelly v. Astrue*, 2008 WL 3200884, at *4 (D. Me. Aug. 7, 2008) (relying on invoices when granting attorneys' fees).

Finally, plaintiff contends that the requested attorneys' fees are not reasonable. Specifically, plaintiff points out that there would be no need for the attorneys' fees if defendant had not removed this case to federal court and filed counterclaims against him. Of course,

---

[9] Plaintiff also contends that defendant has no authority to request attorneys' fees for itself because it is not the holder of the mortgage note. That contention is addressed below.

11

plaintiff originally brought this case in Massachusetts Land Court, and the Court granted summary judgment in defendant's favor on its counterclaims for breach of contract and possession. Plaintiff provides no authority, and the Court can find none, for the proposition that a defendant is not allowed to recover attorneys' fees from a plaintiff because the defendant prolonged the litigation by bringing meritorious counterclaims.

A review of the time records shows the fees are reasonable. Accordingly, plaintiff's motion to strike will be denied as to the Longoria affidavits.

## IV. Breach-of-Contract Damages

The Longoria affidavits establish that (1) defendant acquired the Nantucket property at the October 9, 2012 foreclosure sale for $1,360,000; (2) defendant has incurred foreclosure fees and costs of $16,912,29; and (3) as of March 4, 2014, defendant has incurred attorneys' fees of $37,790.56. (Docket No. 100 ¶¶ 3, 4, 6; *Id.*, Exs. A, B; Docket No. 110, Ex. A; Docket No. 112 ¶ 4; *Id.*, Ex. A). The Frazier affidavit establishes that plaintiff's total debt on the mortgage was $2,301,363.46 as of October 9, 2012. (Docket No. 101 ¶ 11; *Id.*, Exs. A-D). Accordingly, defendant has established damages of $996,066.31.

Plaintiff contends that he does not owe defendant any damages because he is not in a contractual relationship with defendant. He contends that because defendant is the servicer of the mortgage loan but not the loan's owner, defendant does not have standing to pursue damages or attorneys' fees from his breach of the mortgage contract.

As the Court has noted on two prior occasions, RCS was the lawful mortgagee of record at the time of the notice of sale and the foreclosure, and RCS acted as an authorized agent for the owner of the note. *Foregger v. Residential Credit Solutions, Inc.*, 2013 WL 6388665, at *6 (D.

12

Mass. Dec. 5, 2013); *Foregger v. Residential Credit Solutions, Inc.*, 2013 WL 3208596, at *11 (D. Mass. Jun. 21, 2013). As a servicer, RCS acts on behalf of the owner of the debt. *See Peoples Mortg. Co. v. Federal Nat'l Mortg. Ass'n*, 856 F. Supp. 910, 917-18 (E.D. Pa. 1994). RCS, as the agent of the debt holder, has the right both to collect on the debt and to foreclose on the mortgage. *See* Mass. Gen. Laws ch. 106 §§ 1-201(20), 3-301; *see also* Mass. Gen. Laws ch. 244 § 17B (requiring notice of *mortgagee's* intention to pursue a deficiency after foreclosure); *In re O'Kelley*, 2010 WL 3984666, at *1 (D. Haw. Oct. 8, 2010). Plaintiff sets forth no specific facts disputing defendant's authority to pursue a breach-of-contract claim against him for failing to comply with the terms of his mortgage.

Accordingly, defendant's motion for summary judgment for breach-of-contract damages will be granted.

## V.  Conclusion

For the foregoing reasons, defendant's motion for summary judgment as to its breach-of-contract damages is GRANTED. Plaintiff's motion to strike is DENIED.

**So Ordered.**


/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: April 4, 2014                          United States District Judge

13